IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States,<br>　　　　Plaintiff,<br>　　v.<br>Abhijit Prasad,<br>　　　　Defendant. | Case No. 18-cr-00368-CRB-1<br><br>**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255** |

Before the Court is Defendant Abhijit Prasad's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. See Mot. (dkt. 184). Having denied Prasad's motion for court-appointed habeas counsel, see dkt. 183, and having carefully reviewed the parties' briefing, the Court determines that an evidentiary hearing is not required because Prasad is not entitled to relief as a matter of law, and DENIES the motion.

## I.　BACKGROUND

In 2016, Abhijit Prasad was indicted on twenty-nine counts of making false statements on visa petitions in violation of 18 U.S.C. § 1546(a), two counts of obtaining H-1B nonimmigrant visas by fraud in violation of 18 U.S.C. § 1546(a), and two counts of aggravated identity theft for using the digital signature of a former colleague to support the fraudulent visa petitions in violation of 18 U.S.C. § 1028A(a)(1). Indictment (dkt. 1-3).

Prasad was the president and CEO of a visa services company called Maremarks. U.S. Trial Br. at 2 (Dkt. 53). The Government alleged that although Maremarks' basic business model was legitimate—"visa servicing companies can file visa petitions with

United States Citizenship and Immigration Services (USCIS) for qualified beneficiaries who seek to come to the United States on nonimmigrant work visas"—Prasad committed fraud to obtain H-1B visas. Id. Under the guidance in effect at that time, H-1B visas required that the visa beneficiary have "an existing work project." Id. The H-1B visa application thus asked for the "location where work will be performed, job title, and the length of visa requested." Id. at 3. The Government's theory at trial was that "Prasad falsely stated that work would be performed at a specific end-client—Cisco (counts 1, 3, 5, 8-11, 13-14, 16-18, 22-23, 25, 27) and Ingenuus (counts 19-21)—when no such work projects existed at either end-client." Id. The Government also alleged that Prasad submitted false supporting documents, including false Statements of Work ("SOWs"), to bolster the visa applications, and forged digital signatures of real Cisco employees on two false SOWs. Id.

Before trial, the Government moved to dismiss Counts 2, 4, 6, 7, 12, 15, 24, 26, 28, and 29 of the Indictment, and the Court granted the motion. Request to Dismiss (dkt. 48); dkt. 60. After a six-day trial, the jury convicted Prasad on all counts. See dkt. 80.

After denying Prasad's motion for acquittal and motion for a new trial, see dkt. 103, the Court sentenced Prasad to 36 months in prison and three years of supervised release. See dkt. 118. Prasad then appealed his conviction and the Court's forfeiture order, and the Court of Appeals affirmed both rulings. See United States v. Prasad, 18 F.4th 313 (9th Cir. 2021); United States v. Prasad, No. 19-10454, 2021 WL 5176462 (9th Cir. Nov. 8, 2021). Prasad, now on supervised release, brings this motion to vacate his sentence under 28 U.S.C. § 2255.

## II.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a court may grant relief if: "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

2

The remedy available under § 2255 is as broad and comprehensive as that provided by a writ of habeas corpus. See United States v. Addonizio, 442 U.S. 178, 184–85 (1979). The remedy, however, does not encompass all claimed errors in conviction and sentencing. See id. at 185. Rather, it is limited to attack convictions and sentences entered by a court without jurisdiction or in violation of the Constitution or laws of the United States. See id. A mere error of law therefore does not provide a basis for collateral attack unless the claimed error constituted "a fundamental defect which inherently results in a complete miscarriage of justice." Id. (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). An error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. Id. at 184.

A federal prisoner may not raise claims in a § 2255 motion that he failed to raise on direct appeal. See Bousley v. United States, 523 U.S. 614, 621 (1998); Reed v. Farley, 512 U.S. 339, 354 (1994). That is, if he could have raised a claim of error on direct appeal but failed to do so, the prisoner has procedurally defaulted the claim and may obtain collateral review under § 2255 only if he can show either cause and actual prejudice or that he is actually innocent. See Bousley, 523 U.S. at 621 (prisoner who failed to challenge validity of guilty plea on appeal procedurally defaulted claim); United States v. Skurdal, 341 F.3d 921, 925 (9th Cir. 2003) (prisoner who failed to bring claims of error on direct appeal procedurally defaulted them); United States v. Mejia-Mesa, 153 F.3d 925, 928 (9th Cir. 1998) (same). A claim rejected on direct appeal may not be litigated again in a § 2255 motion. See United States v. Scrivner, 189 F.3d 825, 828 (9th Cir. 1999) (appellate court decision rejecting claim was binding on court considering § 2255 motion).

Section 2255 requires that a court hold an evidentiary hearing unless the record reveals that the petitioner is not entitled to relief. See Mejia-Mesa, 153 F.3d at 929. "[T]he petitioner need not detail his evidence, but must only make special factual allegations which, if true, would entitle him to relief." Id. (quoting Baumann v. United States, 692 F.2d 565, 571 (9th Cir. 1982). "[A] district court may deny a § 2255 motion without an evidentiary hearing if the petitioner's allegations, viewed against the record, either do not

3

state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." Id. at 931 (district court properly denied evidentiary hearing on claims that failed to state a claim for relief under § 2255 as a matter of law).

## III. DISCUSSION

Prasad contends that relief is proper under § 2255 for four reasons: First, the government improperly instructed the jury to disregard required elements of the visa fraud charge; second, Prasad's convictions for visa fraud were based on misrepresentations that were not material; third, the government's expert on H-1B visas gave false testimony; and fourth, intervening changes in the law have altered the regulatory requirements for H-1B visas since Prasad's conviction. The government argues that by failing to make any of these arguments on direct appeal, Prasad procedurally defaulted and must show either cause and actual prejudice or that he is actually innocent. See Opp'n (dkt. 186); Bousley, 523 U.S. at 621. Prasad argues that his appellate attorney's "intransigence and lack of knowledge in immigration law" occasioned his failure to raise these issues on direct appeal. Reply (dkt. 190) at 2.[1] The Court interprets Prasad's reply to raise a claim for ineffective assistance of appellate counsel as to each of the four claims he now raises in this motion.[2]

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland v. Washington, 466 U.S. 668 (1984). See Smith v. Robbins, 528 U.S. 259, 285 (2000); Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010).

---

[1] Prasad also argues that the government misapplies its procedural default precedents—Frady, Dunham, and Johnson—and that Prasad did not procedurally default on his claims on direct appeal. Reply at 2. Prasad's efforts to distinguish these cases are in vain: They clearly stand for the proposition that if a defendant fails to make arguments that he could have made on direct appeal—and Prasad does not contend that he could not have done so—he has procedurally defaulted. See United States v. Frady, 456 U.S. 152, 167–68 (1982); United States v. Dunham, 767 F.2d 1395, 1397 (9th Cir. 1985); United States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993).

[2] This interpretation is further supported by the fact that Prasad moved before the appellate panel to represent himself in his appeal and to strike his appellate counsel's opening brief, citing ineffective assistance. See United States v. Prasad, No. 19-10454 (9th Cir.), dkt. 11 (motion to withdraw counsel); dkt. 17 (motion to appear pro se); dkt. 27 (motion to strike opening brief). Each request was denied. See id. dkt. 29 (report from Appellate Commissioner recommending denial of Prasad's requests); dkt. 36 (order adopting report).

4

1  "First, the petitioner must show that counsel's performance was objectively unreasonable,
2  which in the appellate context requires the petitioner to demonstrate that counsel acted
3  unreasonably in failing to discover and brief a merit-worthy issue." Moormann, 628 F.3d
4  at 1106 (citing Smith, 528 U.S. at 285).  The Court "must indulge a strong presumption
5  that counsel's conduct falls within the wide range of reasonable professional assistance."
6  Strickland, 466 U.S. at 689.  The absence of evidence that counsel provided
7  constitutionally inadequate advice cannot overcome the presumption that counsel's
8  conduct fell within the range of reasonable professional advice.  See Burt v. Titlow, 571
9  U.S. 12, 23 (2013).  The relevant inquiry is therefore not what defense counsel could have
10 done, but whether the choices counsel made were reasonable.  See Babbitt v. Calderon,
11 151 F.3d 1170, 1173 (9th Cir. 1998).

12  Second, the petitioner must show prejudice, which in the appellate context means
13 that the petitioner must demonstrate a reasonable probability that, but for appellate
14 counsel's failure to raise the issue, the petitioner would have prevailed in his appeal.
15 Smith, 528 U.S. at 285–86; Moormann, 628 F.3d at 1106.  The Court applies this standard
16 to each of the four claims Prasad raises in his motion.

### A. Government's Closing Argument

Prasad contends that, because the government "instructed" the jury to "focus on the first two elements" of the offense of visa fraud, 18 U.S.C. § 1546(a), the government "prevented" the jury from considering the third, fourth, and fifth elements of the offense. Mot. at 3–4.  Prasad does not explain why his appellate counsel did not raise this argument on appeal, but it is not difficult to glean: Prasad confuses an uncontroversial invitation to the jury to focus on the elements that were heavily contested at trial with an instruction to the jury to disregard three elements of the charge.  See Mot. at 4.  Reviewing the government's statements in context provides more evidence that the government did not, in fact, minimize the elements of visa fraud from five to two:

> Let's go through the elements of this charge first.  As the Judge just instructed you, there are five elements to the charge of false statements in a visa application.  Think of elements like

> building blocks. If you find that the Government has proven each element of the charge, then you will find that the Government has met its burden.
> Now, I submit to you, based on the evidence, that three of these elements—the last three—have not been disputed in this case. The first is that the statement was material to the decision of USCIS; meaning, that it influenced or was capable of influencing the agency's decision.
> Now, you heard from the USCIS Officers Monica Verma and Becky Jones about how they adjudicate these petitions, about the information that they look for. And they told you that if there is no definite, non-speculative job for these workers, then the petition will be denied.
> You also saw that each petition was signed and certified under penalty of perjury. And, lastly, you heard from Officer Verma that the statement—these statements were on petitions that are required by the relevant immigration laws and regulations.
> So really, as we go through each of these counts, I want you to focus on the first two elements. The Defendant made a false statement and he knew at the time that the statement was untrue.

Tr. Vol. 6 (dkt. 89) at 935:21–936:20. The government stated, as the Court instructed, that there are five elements of visa fraud—a false statement, knowledge, materiality, penalty of perjury, and a petition required by relevant immigration laws and regulations—and that when the government has proven each element, it has met its burden. Id. at 935:21–936:1; see also Jury Instructions (dkt. 81) at 17. Then the government makes the statement that Prasad challenges—"Now, I submit to you, based on the evidence, that three of these elements—the last three—have not been disputed in this case." Id. at 936:2–4. And then, critically, the government explains why the last three elements—materiality, penalty of perjury, and the petition—"have not been disputed" "based on the evidence": Because the government's witnesses explained how the information in the petition was material to the government; that "each petition was signed and certified under penalty of perjury"; and that "statements were on petitions that are required by the relevant immigration laws and regulations." Id. at 936:7–16. It is after this explanation that the government invites the jury to "focus on the first two elements" of falsity and knowledge. Id. at 936:17–18.

Far from instructing the jury to disregard the last three elements, the government told the jury why those elements were met based on the evidence it presented at trial. This

6

is further underscored by later closing statements from the government and defense counsel referencing the government's burden: In defense counsel's closing argument, Prasad's counsel stated that "the Government has to prove every single element of this case beyond a reasonable doubt. It's not a mere possible doubt. It's beyond a reasonable doubt. Every single element." Id. at 963:5–8.  And in the government's rebuttal, it again referenced the materiality element of visa fraud, which is one of the elements Prasad insists the government instructed the jury to disregard. Id. at 968:11–15 ("Now, what the agency did after the fact goes to the element of materiality, which is one of the elements that Mr. Rodriguez walked you through; i.e, would it have mattered to the agency if it had known the things that Mr. Prasad knew at the time he filed the petitions?").

Because the government did not misstate the law—and correctly instructed, as did the Court, that the jury must find that the government has met its burden on all five elements of the visa fraud charge—it was objectively reasonable for Prasad's appellate counsel not to raise the issue on appeal, and failure to raise it certainly did not prejudice Prasad in his appeal.

### B.   Misrepresentation of a Material Fact under § 1546(a)

Prasad next argues that he could not have been convicted of visa fraud because the indicted misrepresentations—that the H-1B visa beneficiaries had "actual existing work projects" waiting for them in the United States—were not material under 18 U.S.C. § 1546(a) as a matter of law.  The Court addresses whether Prasad's appellate counsel's decision not to appeal on this ground was objectively reasonable, and whether Prasad was prejudiced as a result.

#### 1.   Objective Reasonableness

Where a client has asked their appellate counsel to raise an issue on appeal—as Prasad stated he did—the Court presumes that counsel exercised their professional judgment to raise only issues that she concluded most merited appellate review. Appointed appellate counsel is not required "to raise every 'colorable' claim suggested by a client." Jones v. Barnes, 463 U.S. 745, 754 (1983).  "[W]innowing out weaker

arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (internal quotation marks omitted).  The Court applies this presumption even despite Prasad's insistence that his counsel "never acted as counsel in an immigration matter in regards to H-1B visa application process" and "did not obtain the assistance of an immigration attorney in the preparation of the opening brief." Reply at 4. As the Appellate Commissioner's report and recommendation observed (which was adopted in full by the panel deciding Prasad's direct appeal): "[Prasad's appellate counsel] has appeared as counsel of record in more than 30 Ninth Circuit appeals, and the opening brief that she has filed on Prasad's behalf succinctly and competently presents three issues for review." See Prasad, No. 19-10454, dkt. 29 at 7.  While Prasad may have preferred an appellate attorney with the precise experience he claims that his appellate counsel lacked, "[t]he [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989); see also Gonzalez v. Knowles, 515 F.3d 1006, 1012 (9th Cir. 2008) ("[I]ndigent defendants do not have a constitutional right to be represented by their counsel of choice.").  Prasad has not presented any evidence that his appellate counsel was inadequate to represent him on appeal, beyond the fact that, in her professional opinion, different questions merited presentation in the briefs.  And while Prasad was not successful on his claims on direct appeal, his counsel raised viable issues that merited significant treatment from the panel, particularly on the question of forfeiture. See United States v. Prasad, 18 F.4th 313 (9th Cir. 2021); United States v. Prasad, No. 19-10454, 2021 WL 5176462 (9th Cir. Nov. 8, 2021).

### 2. Prejudice

Further, even if it was objectively unreasonable of Prasad's appellate counsel not to raise the issue of whether Prasad's statements were material under § 1546(a), Prasad has

8

1   not demonstrated a reasonable probability that, but for appellate counsel's failure to raise
2   the issue, Prasad would have prevailed in his appeal.

3         Prasad cites a litany of authority that he contends has concluded that the
4   misrepresentation of "actual existing work projects" is not material as a matter of law
5   under § 1546(a).  The vast majority of this authority does not stand for this proposition.
6   Matter of Nemis, 28 I. & N. Dec. 250 (BIA 2021), does not address the question of
7   materiality at all, and concludes—uncontroversially—that "knowingly preparing and
8   submitting . . . applications so that others would receive nonimmigrant visas for which
9   they were ineligible . . . is inherently dishonest and fraudulent."  Id. at 258.  The
10  Department of Labor Field Operations Handbook that Prasad cites lists a number of
11  examples of material facts, and he points out that an existing job is not one of them;
12  however, this list is not exclusive, and in any event many of the material facts that are
13  listed, such as the job's "wage rate," "title," and "location," clearly assume an existing
14  position.  Mot. at 8.  Similarly, ITServe, Serenity, Stellar IT, and Thatikonda do not
15  address the precise question at issue here—whether a misrepresentation that H-1B visa
16  beneficiaries had "actual existing work projects" waiting for them in the United States,
17  when they in fact did not, is a "material fact" under § 1546(a).  See ITServe All., Inc. v.
18  Cissna, 443 F. Supp. 3d 14 (D.D.C. 2020) (successful challenge of a CIS 2018 Policy
19  Memo requirement of proof of a "non-speculative work assignment"); Serenity Info Tech,
20  Inc. v. Cuccinelli, 461 F. Supp. 3d 1271 (N.D. Ga. 2020); Stellar IT Sols., Inc. v. USCIS,
21  No. CV 18-2015 (RC), 2020 WL 3129019 (D.D.C. June 12, 2020); Thatikonda v. USCIS,
22  No. CV 19-685 (RC), 2020 WL 2126716 (D.D.C. May 5, 2020).

23        Only two recent cases in this district, United States v. Patnaik and United States v.
24  Guntipally, squarely address ITServe's application to the issue of materiality of
25  misrepresentations like Prasad's.  United States v. Patnaik, No. 22-CR-00014-BLF, 2023
26  WL 1111829 (N.D. Cal. Jan. 30, 2023); United States v. Guntipally, No. 16-CR-00189-
27  JSC-1, 2022 WL 2183285 (N.D. Cal. May 23, 2022).  In Patnaik, the Court held that
28  ITServe's conclusion—and the USCIS's Recission Memo confirming that the petitioner

need not identify the beneficiary's specific day-to-day assignments—required that misstatements regarding where a beneficiary would be working or whether there was a precise job waiting for them with a particular employer were not material as a matter of law. Patnaik, 2023 WL 1111829, at *4–5. Conversely, in Guntipally, Judge Corley held on a § 2255 motion that ITServe does not stand for the broad proposition that "false statements about available positions were not material." Guntipally, 2022 WL 2183285, at *3. Further, "[e]ven if USCIS could not require employers to provide certain kinds of proof, applicants such as Ms. Guntipally are required to be truthful in the H-1B applications themselves." Id. (citing United States v. Narang, No. 19-4850, 2021 WL 3484683, at *6 (4th Cir. Aug. 9, 2021), cert. denied, 142 S. Ct. 1360 (2022)). Both cases are currently on appeal, and the Ninth Circuit's prior statements on the question of materiality in § 1546(a) cases provide little guidance as to which direction it will go. See United States v. Matsumaru, 244 F.3d 1092, 1101 (9th Cir. 2001) (stating that materiality "presents a mixed question of law and fact that must be decided by the jury" and that while "[a] statement is material if it is capable of affecting or influencing a governmental decision . . . the agency need not rely on the information in fact for it to be material" (internal quotation marks omitted)).

Given this apparent stalemate, Prasad has not shown that he was prejudiced by his appellate counsel's failure to raise the issue of materiality on direct appeal.

### C. False Expert Testimony

Prasad further argues that the government's expert, Monica Verma, provided false testimony when she stated that under USCIS's regulations, work had to be available at the time the petition was filed. See Tr. Vol 1 at 30:3–4; see also id. at 40:22–41:7 ("Q. If USCIS had had additional information that the other two individuals listed on this Statement of Work were not known or expected to work at Cisco on the work project in the Statement of Work, is that information that would have affected USCIS's decision whether or not to grant the visa? A. Yes, it would. Q. And why? A. Because there is not work available for those individuals. And if there is not work available for those

individuals, we wouldn't be approving an H-1B classification because it would not meet our regulations."). Prasad contends that "newly discovered evidence proves that Ms. Verma was not truthful, since no statute, be it federal or state, or H-1B regulations existed on July 29, 2019, that required availability of work at the time of filing," citing ITServe, Stellar IT Solutions, Serenity, Thatikonda, and Chamber of Com. of United States v. United States Dep't of Homeland Sec., 504 F. Supp. 3d 1077 (N.D. Cal. 2020) (White, J.).

Prasad confuses intervening caselaw with falsity. Each of the cases Prasad cites for this proposition were decided in 2020, after Verma testified in this case. It is undisputable that in 2019, when Verma testified, USCIS interpreted its regulations to require a "specific and non-speculative qualifying assignments in a specialty occupation for the entire time requested on the petition." USCIS Policy Memorandum, Contracts and Itineraries Requirements for H-1B Petitions Involving Third-Party Worksites (2018). That the cases Prasad cites later successfully challenged that requirement, or that that guidance was later rescinded, does not call Verma's candor at trial into question.

### D.   Intervening Changes in Law

Prasad finally argues that the successful challenge of the 2018 Policy Memorandum and its eventual recission, as well as the successful challenge of the 2020 Interim Final Rules before Judge White in Chamber, are intervening changes in law that require reversal of his conviction. But none of these cases address the guidance that was in place when Prasad made the challenged misrepresentations in the H-1B petitions at issue in this case from 2011 to 2015. See Donald Neufeld, USCIS, Determining Employer-Employee Relationship for Adjudication of H-1B Petitions, Including Third-Party Site Placements (2010); see also Prasad, 2021 WL 5176462, at *1 & n.1. To the extent that Prasad employs these cases to contend that his misrepresentations were not material as a matter of law, that argument has already been addressed in the foregoing sections.

Because Prasad has failed to demonstrate ineffective assistance of his appellate counsel for failing to raise these arguments on direct appeal, he has procedurally defaulted on his claims.

## IV. CONCLUSION

For the foregoing reasons, Prasad's amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is hereby DENIED. The Court further DENIES Prasad a certificate of appealability because he has not made "a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2). Nor has he demonstrated that reasonable jurists would find the Court's assessment of his motion debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

Dated: August 3, 2023



CHARLES R. BREYER
United States District Judge