IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>           Plaintiff,<br><br>    v.<br><br>ABHIJIT PRASAD,<br><br>           Defendant. | Case No. 18-cr-00368-CRB-1<br><br>**ORDER DENYING PETITION FOR WRIT OF ERROR CORAM NOBIS** |

Defendant Abhijit Prasad seeks a writ of error coram nobis, asking the Court to set aside his conviction for two counts of aggravated identity theft. The thrust of Prasad's petition is that, under the Supreme Court's 2023 decision in Dubin v. United States, 599 U.S. 110, his conduct no longer qualifies as aggravated identity theft because he did not "use" another person's means of identification "in relation to" a predicate offense. But Prasad's case does not involve the kind of overbroad application of the aggravated identity theft statute that was at issue in Dubin. Rather, his conduct falls squarely within the statutory text. The Court therefore **DENIES** Prasad's petition.

I.    **BACKGROUND**

At trial, the Government contended that Abhijit Prasad, then the president and CEO of a visa services company that filed H-1B visa applications on behalf of nonimmigrant workers, committed visa fraud by including false information on those applications. See Gov. Trial Br. (dkt. 53) at 2; 18 U.S.C. § 1546(a) (visa fraud statute). Federal regulations in effect at that time required H-1B visa beneficiaries to have "an existing work project" to ensure that "overseas specialty workers will fill a demonstrated need at American companies that cannot be adequately filled by American workers." Gov. Trial Br. at 2.

Accordingly, the H-1B visa application asked for the "location where work will be performed, job title, and the length of visa requested." Id. at 3. The Government argued that "Prasad falsely stated that work would be performed at a specific end-client … when no such work projects existed." Id. Cisco was one of the end-clients that Prasad listed on the applications. Id.

The Government also alleged that Prasad committed aggravated identity theft by forging the digital signatures of a real Cisco employee, Naveen Gattu, on false documents (called Statements of Work) that he submitted in support of the visa petitions. Id. The aggravated identity theft statute, 18 U.S.C. § 1028A(a)(1), applies when a defendant, "during and in relation to any [predicate offense], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." Visa fraud is a predicate offense for aggravated identity theft. Id. § 1028A(c)(7).

After a six-day trial, the jury convicted Prasad on twenty-one counts of visa fraud and two counts of aggravated identity theft. The Court denied Prasad's motion for acquittal and motion for a new trial and sentenced him to 36 months in prison and three years of supervised release. The Ninth Circuit affirmed Prasad's conviction. See United States v. Prasad, No. 19-10454, 2021 WL 5176462 (9th Cir. Nov. 8, 2021).

Prasad, who has now fully served his sentence, brings this petition for a writ of error coram nobis. See Pet. (dkt. 210). Through his petition, he seeks to set aside his conviction only as to the two counts of aggravated identity theft.

## II.    LEGAL STANDARD

The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. A writ of error coram nobis provides a mechanism for a criminal defendant "to challenge the validity of a conviction, even though the sentence has been fully served." Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987) (citing United States v. Morgan, 346 U.S. 502, 503–04 (1954)). But coram nobis is a "highly unusual remedy, available only to correct grave injustices in a

narrow range of cases where no more conventional remedy is applicable." United States v. Riedl, 496 F.3d 1003, 1005 (9th Cir. 2007).

For the writ to issue, the petitioner must show that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." Hirabayashi, 828 F.2d at 604. Failure to meet any of these requirements is fatal. Matus-Leva v. United States, 287 F.3d 758, 760 (9th Cir. 2002).

### III. DISCUSSION

Before turning to the core argument in Prasad's coram nobis petition—that the Supreme Court's decision in Dubin v. United States requires that his convictions for aggravated identity theft be vacated—the Court briefly addresses a few of Prasad's alternative arguments. He suggests that § 1028A(a)(1) is unconstitutionally vague, Mot. at 6, 29–30; that he did not use Mr. Gattu's name and digital signature without authorization, id. at 22–23; and that the visa petitions he helped prepare were not fraudulent, id. at 12–16. But he could have raised his vagueness argument earlier, as Dubin did not change the law on vagueness challenges to § 1028A(a)(1).[1] He does not offer "justifiable reasons for the delay," which precludes coram nobis relief on this ground. United States v. Riedl, 496 F.3d 1003, 1009 (9th Cir. 2007). And his other arguments, which attack the sufficiency of the Government's evidence of fraud, merely retread arguments that he already made (and lost) at trial, in post-trial motions, and on appeal. See Prasad, 2021 WL 5176462, at *2. Prasad identifies no fundamental error in this Court's (or the Ninth Circuit's) rulings on these matters.

That leaves Prasad's main challenge to his aggravated identity theft convictions, which is based on the Supreme Court's 2023 decision in Dubin v. United States. Prasad

---

[1] Prasad repeatedly misconstrues Justice Gorsuch's concurrence, which suggests that § 1028A(a)(1) might be void for vagueness, as the holding of the Court. If anything, the majority opinion in Dubin undermines any potential vagueness challenges to the statute. See 599 U.S. at 132 n.10 (rejecting the arguments in Justice Gorsuch's concurrence).

1  argues that Dubin changed the standard for aggravated identity theft and that under Dubin,
2  the Court must vacate his aggravated identity theft convictions. But Prasad overreads
3  Dubin and understates his own conduct, so his challenge fails.

### A. Dubin v. United States

In Dubin, a unanimous Supreme Court vacated the aggravated identity theft conviction of a man who had been charged in connection with a healthcare fraud scheme. 599 U.S. at 114–15. His scheme involved overstating the qualifications of healthcare providers and changing the dates of service on claims for reimbursement by Medicaid. Id. The government's theory of aggravated identity theft was that the defendant entered patients' Medicaid reimbursement numbers—a "means of identification"—on the fraudulent billing. Id. at 115. This fell within the scope of § 1028A(a)(1), the government argued, because the statute applies whenever "the use of [a] means of identification 'facilitates or furthers' the predicate offense in some way." Id. at 117.

The Court rejected the government's broad application of § 1028A(a)(1). Instead, the Court held that

> [a] defendant "uses" another person's means of identification "in relation to" a predicate offense when this use is at the crux of what makes the conduct criminal. Being at the crux of the criminality requires more than a causal relationship, such as "facilitation" of the offense or being a but-for cause of its "success." … Instead, with fraud or deceit crimes like the one in this case, the means of identification specifically must be used in a manner that is fraudulent or deceptive. Such fraud or deceit going to identity can often be succinctly summarized as going to "who" is involved.

Id. at 131–32. Thus, under Dubin, the core question is whether the use of another person's means of identification is "at the crux of what makes the [predicate offense] conduct criminal." Id. Put differently, "the means of identification specifically [must be] a key mover in the criminality." Id. at 122–23.

Lower courts have now had an opportunity to flesh out Dubin's interpretation of § 1028A(a)(1). In United States v. Gladden, one of the more thorough applications of Dubin, the Eleventh Circuit reviewed several charges of aggravated identity theft related to

4

1   a pharmaceutical billing scheme. As part of the scheme, one defendant had misrepresented
2   which patients were receiving certain prescriptions and also forged a doctor's signature on
3   prescriptions, and another defendant had instructed one of his employees to obtain a
4   medically unnecessary prescription on behalf of her minor daughter. 78 F.4th 1232, 1239–
5   40 (11th Cir. 2023). The Eleventh Circuit upheld the aggravated identity theft convictions
6   against the first defendant, both for her conduct regarding patient prescriptions and for her
7   forging of the doctor's signature. Id. at 1244–46. As to the patients' identities, the court
8   explained that the misidentification constituted identity theft because "the deception
9   centered on the identity of the individual receiving the product." Id. at 1245 (citing Dubin,
10  599 U.S. at 123). As to the doctor's signature, the court found that the forgery likewise
11  qualified as identity theft because "[b]y explicitly using [the doctor's] identity to falsely
12  represent to insurance and [others] that the prescriptions were authorized, [the defendant]
13  appropriated [the doctor's] personal information to deceive others." Id. at 1246. But the
14  Eleventh Circuit vacated the conviction of the other defendant, explaining that the
15  misrepresentations "involved only whether the prescriptions were medically necessary."
16  Id. at 1248–49. That conduct "was illegal … but it was not aggravated identity theft." Id.
17      United States v. Croft provides another example of a post-Dubin case affirming
18  convictions for aggravated identity theft. In that case, the defendant sought to have his
19  company (which trained handlers and dogs for police work) approved by a state veterans
20  commission so that his clients could pay him using G.I. Bill funds. 87 F.4th 644, 646 (5th
21  Cir. 2023), cert. denied, 144 S. Ct. 1130 (2024). In his application to the veterans
22  commission, he identified four trainers—none of whom ever reported to work or had given
23  permission to have their names used. Id. The defendant was charged with and convicted
24  of aggravated identity theft (with wire fraud as the predicate offense). The court upheld
25  his conviction, explaining that his "misrepresentations about 'who' was teaching courses
26  … were the basis—and 'heart of'—his wire fraud convictions." Id. at 648 (quoting Dubin,
27  599 U.S. at 123). The court also observed that "the roster of instructors and their
28  qualifications was 'particularly important' to the application." Id. at 649.

5

Prasad brings the Court's attention to a third case, United States v. Noble. The defendant in Noble submitted fraudulent applications for small business loans under other people's names, and he misrepresented facts about their businesses. 713 F. Supp. 3d 1366, 1368 (N.D. Ga. 2024). The defendant pleaded guilty to theft of government funds and aggravated identity theft, but after Dubin he filed a motion to withdraw his guilty plea. Id. at 1368–69. The court granted the defendant's motion, explaining that "his use of the means of identification was not material to the small-business-loan fraud," because the basis for his fraud was not the individuals' identities but rather their business records. Id. at 1371–72. The Noble court offered this roadmap for other courts to follow:

> Dubin seems to instruct lower courts to look at two distinct aspects of aggravated identity theft: first, at what the defendant uses (a means of identification); second, at how the defendant uses it (fraudulently or deceptively). First, because Dubin requires the misuse of a means of identification specifically, it behooves courts to determine what means of identification are involved in a given case. …
>
> …
>
> Second, where a means of identification is used, courts must ensure that it is used in a way that is fraudulent and deceptive. In a case like Dubin, this translates into a requirement that the means of identification be material to the fraud. In other words, the means of identification must matter to the fraud committed. And as the Supreme Court stressed, it must matter a great deal: the means of identification must do more than cause or facilitate the issuance of funds.

Id. at 1370 (emphasis in original).

Gladden and Croft illustrate that Dubin did not do away with aggravated identity theft prosecutions altogether. Rather, as the Noble court helpfully articulated, the government must simply prove that the defendant (1) used a means of identification (2) in a way that is fraudulent or deceptive (or, in other words, that is material to the fraud).

### B. Prasad's Aggravated Identity Theft Convictions

Prasad argues that his aggravated identity theft convictions should be overturned under Dubin. But there is a threshold issue: Dubin did not actually change the law that applied to his case. And in any case, Prasad's argument would fail on the merits.

6

1   **No Change of Law.**  When the Court granted certiorari in Dubin there was a circuit split, with "[m]any lower courts" having adopted "more restrained readings of the aggravated identity theft statute."  See Dubin, 599 U.S. at 116.  The Ninth Circuit was one such court.  See United States v. Hong, 938 F.3d 1040, 1050–52 (9th Cir. 2019) (adopting a "narrow[]" construction of "use" in § 1028A(a)(1) and requiring that "the defendant attempt to pass him or herself off as another person or purport to take some other action on another person's behalf").  Thus, when the Supreme Court ultimately adopted the narrower reading of § 1028A(a)(1), it agreed with—rather than changing—Ninth Circuit case law.  See United States v. Umoren, No. 22-10325, 2024 WL 1635570, at *2 (9th Cir. Apr. 16, 2024) ("Dubin's interpretation of the [aggravated identity theft] statute affirmed existing Ninth Circuit law at the time of Umoren's guilty plea.").

Hong was decided in September 2019, right in the middle of post-trial briefing in this case.  Prasad almost immediately used Hong to challenge his aggravated identity theft convictions, arguing that § 1028A(a)(1) did not criminalize his use of Mr. Gattu's name and digital signature.  See Reply ISO Post-Trial Mots. (dkt. 102) at 4–5.  The Court rejected Prasad's arguments, and the Ninth Circuit affirmed on appeal.  See Prasad, 2021 WL 5176462, at *2.  Prasad's present motion reraises the same arguments—just now, he relies on Dubin rather than Hong.  See Mot. at 8–9.  "Coram nobis is an extraordinary remedy," however, and "a coram nobis petitioner may only relitigate the merits of an issue previously decided on direct appeal if he identifies a change in controlling law or makes a showing of 'manifest injustice.'"  United States v. Harkonen, 705 F. App'x 606, 606 (9th Cir. 2017); see also Riedl, 496 F.3d at 1005 (coram nobis is "a highly unusual remedy" reserved for "a narrow range of cases where no more conventional remedy is applicable").  There has been no change in law, and Prasad fails to show manifest injustice.

**No Success on Merits.**  Prasad's aggravated identity theft convictions satisfy the Supreme Court's interpretation of § 1028A(a)(1).  First, he used Mr. Gattu's name and digital signature—that is, Mr. Gattu's identity.  The Ninth Circuit has already affirmed on this ground.  See Prasad, 2021 WL 5176462, at *2 ("Prasad affixed Gattu's name on these

7

statements of work and, thus, used Gattu's means of identification 'during and in relation to' his commission of visa fraud."). Second, Prasad's use of Mr. Gattu's identity was fraudulent and deceptive: he used Mr. Gattu's identity to deceive U.S. immigration authorities as to who was vouching for work projects for H-1B visa applicants. See Dubin, 599 U.S. at 117, 132 ("The relevant language in § 1028A(a)(1) 'covers misrepresenting who received a certain service,' but not 'fraudulent claims regarding how or when a service was performed.'" (emphasis in original) (citation omitted)). This deception was at the crux of Prasad's visa fraud, which used Mr. Gattu's apparent support to convince immigration authorities that work projects existed for his clients.

Prasad's conduct is substantially similar to that of the Croft defendant and the first Gladden defendant (the one whose conviction was upheld). The Croft defendant misrepresented who would train police dogs and handlers at his business. 87 F.4th at 648. And the Gladden defendant misrepresented who authorized certain prescriptions when she forged the doctor's signature. 78 F.4th at 1246. Likewise, Prasad misrepresented who supported his clients' visa petitions. In each of these cases, the means of identification (the trainers' names, the doctor's signature, and Mr. Gattu's name and digital signature) were "used in a manner that is fraudulent." Dubin, 599 at 132. That is enough to sustain an aggravated identity theft conviction.[2]

At times Prasad appears to argue that his use of Mr. Gattu's identity was not at the crux of his visa fraud because the false statements Prasad submitted on his clients' visa petitions were not material. Mot. at 11–12. By and large, Prasad's arguments on this front actually are challenges to his visa fraud convictions, and he has already made these same points in his § 2255 motion to vacate his sentence. See Mot. to Set Aside and/or Vacate

---

[2] To be sure, Prasad's fraud went beyond deceiving immigration authorities as to who endorsed work projects for potential H-1B visa holders—he also deceived authorities as to whether those work projects existed at all. But that does not help Prasad. Identity theft is often paired with other fraud, and Dubin does not require the counterintuitive outcome that a defendant with a more expansive fraud scheme is less liable than a defendant with a targeted scheme. See, e.g., United States v. Conley, 89 F.4th 815, 826 (10th Cir. 2023) (sustaining aggravated identity theft conviction under Dubin when the defendant "falsified both the substance of [] lien releases and who had authored them" (emphasis added)).

8

Judgment (dkt. 184) at 7–9.  The Court rejected those arguments, though they are on appeal before the Ninth Circuit.  See Notice of Appeal (dkt. 206); Order Granting COA (dkt. 221).

  Even if the Court tailors Prasad's argument to be that the fraudulent Statements of Work were not material to his underlying visa fraud, that argument too would fail.  Though Prasad did not have to submit Statements of Work in support of his clients' visa applications, doing so increased the odds of them being approved.  See Opp. (dkt. 213) at 6.  That is sufficient to put Prasad's use of Mr. Gattu's identity on the Statements of Work "at the heart of the deception."  See, e.g., United States v. Fullerton, No. 21-cr-216-RP, 2023 WL 6150782, at *3 (W.D. Tex. Sept. 20, 2023) (affirming aggravated identity theft conviction under Dubin where defendant used a CPA's name on fake tax records "to lend credibility to fraudulent loan applications"); United States v. Daniels, No. 21-cr-287-VMC, 2023 WL 4532675, at *4 (M.D. Fla. July 13, 2023) (affirming aggravated identity theft conviction under Dubin where defendant forged "[a] signature on a tow slip he had not reviewed to fool the tax collector's office").

  As a final source of support for his argument that using Mr. Gattu's identity was not central to his visa fraud scheme, Prasad points to some of the Court's remarks at his sentencing.  Prasad highlights comments by the Court that this case is "not your garden-variety identity theft" (which, the Court explained, would be like "taking somebody's credit card or repeatedly using a name [and] destroying their credit") and that "the identity theft was really minor in this particular case and incidental to performing the criminal acts that he was involved in."  Sentencing Tr. (dkt. 140) at 9:9–11, 17:14–16.  But those statements do not help Prasad.  The Court was speaking in the sentencing context, weighing the factors set out in 18 U.S.C. § 3553(a).  See id. at 9:1–2 ("I have to impose a sentence that is reasonable under the circumstances.").  Thus, the Court's observation that Prasad's use of Mr. Gattu's identity did not "destroy[]" his credit and thereby "cause[] a separate harm," id. at 9:9–14, goes to "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense [and] to protect

the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A), (C). It does not mean, however, that Prasad's use of others' means of identification lacked a sufficient nexus to his visa fraud.[3]

To the contrary, the Court expressly stated at sentencing that Prasad "stole the identity in furtherance of his scheme to get individuals into the country illegally," and that his use of their identity "was narrowly utilized … for just that purpose." Sentencing Tr. at 9:19–23. In other words, Prasad's use of Mr. Gattu's identity did not merely facilitate his visa fraud scheme; it was a "key mover" in that scheme. See Dubin, 599 U.S. at 122–23.

## IV. CONCLUSION

The Court finds that Prasad's use of Mr. Gattu's name and digital signature is the kind of conduct criminalized by the aggravated identity theft statute under Dubin. As for Prasad's other attacks on his convictions, they are either untimely, duplicative of prior motions, or pending before the Ninth Circuit. In any case, they do not present the kind of unusual circumstances that would justify coram nobis relief.

The Court therefore **DENIES** Prasad's petition for a writ of error coram nobis.

**IT IS SO ORDERED.**

Dated: December 11, 2024

CHARLES R. BREYER
United States District Judge

---

[3] Moreover, it does not matter for purposes of the aggravated identity theft statute whether Prasad indented to (or actually did) harm Mr. Gattu. The defendant in Gladden did not intend to harm or actually harm the doctor whose signature she forged, 78 F.4th at 1246, and the defendant in Croft did not intend to harm or actually harm the trainers whose names he listed on his application, 87 F.4th at 648–49. What matters is whether the use of others' means of identification was a key mover in the underlying offense.